# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**WILLIE HAMPTON (# 79948-011)**                                              **PLAINTIFF**

**v.**                                                              **No. 2:06CV100-SA-SAA**

**TUNICA COUNTY BOARD**
**OF SUPERVISORS, et al.**                                                    **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on the *pro se* prisoner complaint of Willie Hampton, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the Court notes that the Plaintiff was incarcerated when he filed this suit. At the Court's request, the parties have submitted their briefs on the issue of abstention. For the reasons set forth below, the Court finds that abstention is not appropriate in this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 21, 2000, Willie Hampton was arrested by federal and state law enforcement agents and charged with violation of Mississippi's controlled substance laws. During Hampton's arrest, the Tunica County Sheriff's Department seized a 1970 Mercury Cougar, two Ford Mustangs, and $355.00. On March 30, 2000, nine days after his arrest, Tunica County filed a complaint for forfeiture in the Tunica County Circuit Court. After a few initial discovery disputes, the Circuit

---

[1] As with any case involving concurrent civil, criminal, state, and federal matters, the factual and procedural background relevant to this matter is complicated and spread among several different sources. For reference purposes, the following sources provide the relevant background information: United States v. Bowen, 108 Fed. Appx. 945 (5th Cir. 2004); Hampton v. Tunica County Bd. of Supervisors, 2006 U.S. Dist. LEXIS 50558 (N.D. Miss. July 24, 2006); One 1970 Mercury Cougar v. Tunica County, 936 So. 2d 988 (Miss. App. 2006); Hampton v. United States, 2007 U.S. Dist. LEXIS 93174 (N.D. Miss. Dec. 17, 2007); Hampton v. Tunica County Bd. of Supervisors, 2008 U.S. Dist. LEXIS 75849 (N.D. Miss. Sep. 29, 2008).

Court entered an order on November 30, 2000, granting a motion to stay the forfeiture action filed by Tunica County. The court stayed all discovery until the resolution of Hampton's criminal and civil matters pending before the federal district court.

Hampton was indicted in federal court on April 6, 2000, on three substantive counts of possessing with intent to distribute and distributing cocaine base and powder cocaine. A superseding indictment on May 25, 2000, added a conspiracy count charging Hampton and Mack Arthur Bowens with conspiring to distribute a large quantity of cocaine hydrochloride and base.

After a two-week joint trial, Hampton was acquitted of the conspiracy charge and convicted on the substantive counts on January 30, 2001. On July 11, 2001, Hampton was sentenced to life in prison without possibility of parole on two counts and 30 years on the third count, all terms to run concurrently. Hampton's convictions were affirmed on direct appeal.

On January 31, 2005, in the state court forfeiture action, Hampton filed a motion, claiming that the delayed resolution of the forfeiture proceeding resulted in a violation of his rights. The Circuit Court of Tunica County subsequently entered an order on March 8, 2005, holding that the property was forfeited to Tunica County. Hampton appealed.

On August 22, 2006, the Mississippi Court of Appeals reversed the forfeiture order of the Tunica County Circuit Court and remanded the civil forfeiture action to allow the parties to develop a record as to whether the delay in initiating the forfeiture proceeding constituted a Fourteenth Amendment violation, under the factors articulated by the United States Supreme Court in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972).

Hampton filed the complaint in the civil action *sub judice* in the United States District Court for the District of Columbia on January 15, 2006. The case was then transferred to this Court.

Hampton alleges in his complaint that various defendants violated his civil rights during his federal criminal prosecution. At the time Hampton filed this case, his motion to vacate, set aside, or correct his sentence in his criminal case – setting forth substantially the same issues as this civil case – was pending in this Court. The Court therefore stayed the case *sub judice* until the criminal issues were resolved. In the criminal matter, the Court denied Hampton's motion on December 19, 2007, and lifted the stay on this civil matter on January 24, 2008.

On September 29, 2008, the Court dismissed all of the Plaintiff's claims except his claim of due process violations in the seizure and forfeiture of the Mercury Cougar, two Ford Mustangs, and $355.00 in United States currency. The Court ordered the parties to submit briefs on whether the Court should abstain from exercising jurisdiction over the remaining issue, as the same issue is currently pending in the state court forfeiture action.

## II. DISCUSSION

The only issue remaining before this Court is the Plaintiff's claim of due process violations in the seizure and forfeiture of his Mercury Cougar, two Ford Mustangs, and $355.00. The issue currently pending in state court is whether the delay in prosecuting the state court forfeiture action constituted a due process violation under the Fourteenth Amendment, using the factors articulated in Barker v. Wingo, 407 U.S. 514 (1972).

The parties have not alleged that there is a particular policy in place regarding seizures and asset forfeitures that is at issue, nor have they singled out any particular state regulatory scheme or law for constitutional analysis. The issue is whether this specific seizure and prolonged civil forfeiture action constituted a due process violation.

The parties have submitted their briefs, and all of the remaining parties - including the

Plaintiff himself - urge the Court to abstain from considering the Plaintiff's remaining claim until the state court matter is resolved. The briefs propose several different doctrines under which the parties believe the Court should abstain, and the Court will address each of them in turn.

## A.     *Pullman*

"Pullman abstention is a judicially-created doctrine which postpones the exercise of federal jurisdiction in order to clarify ambiguous state law issues when resolution of such issues might eliminate or substantially modify a federal constitutional question." Stephens v. Bowie, 724 F.2d 434, 435 (5th Cir. 1984) (citing R.R. Comm'n v. Pullman Co., 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941)). Abstention under Pullman is the exception, rather than the rule. Pietzsch v. Mattox, 719 F.2d 129, 131 (5th Cir. 1983).

The Fifth Circuit has stated that a federal court may abstain under the Pullman doctrine if one of the following three factors is present: (1) A disposition of a question of state law involved in the case can eliminate or narrow the scope of the federal constitutional issue; (2) The state law question presents difficult, obscure, or unclear issues of state law; or (3) A federal decision could later conflict with subsequent state court resolutions concerning the same regulatory program or scheme, thus engendering more confusion. Stephens, 724 F.2d at 435.

The Fifth Circuit has also stated that "Pullman abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." Ibarra v. Bexar County Hosp. Dist., 624 F.2d 44, 46 (5th Cir. 1980). "[T]here are two prerequisites for Pullman abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." Id., 624 F.2d at 47.

More recently, the Fifth Circuit has utilized a different two-pronged approach. In Nationwide, the Fifth Circuit stated that Pullman abstention was appropriate in cases that involve "(1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm'n, 283 F.3d 650, 653 (5th Cir. 2002).

A common element among all of these tests is that there must be an unsettled issue of state law. In Pullman, the issue was whether the state railroad commission had authority under state law to issue a particular order. Pullman, 312 U.S. at 501-02. In Ibarra, the issue was the proper construction of a state constitution and statute. Ibarra, 624 F.2d at 47. In Palmer, several issues of state law existed, including the proper interpretation of a state constitution and statutes regarding bar membership. Palmer v. Jackson, 617 F.2d 424, 428-29 (5th Cir. 1980). Other examples of uncertain issues of state law include: the proper construction of a state statute regulating the practice of law;[2] whether a state statute applied prospectively;[3] whether a provision of a state constitution created a property interest;[4] and the proper construction of a state statute that could arguably be interpreted in a manner that would violate the federal Constitution.[5]

In the present case, there is no unsettled issue of state law. The only issue of law remaining before this Court is whether the seizure and forfeiture of the Plaintiff's property violated his due

---

[2] Nationwide Mut. Ins. Co., 283 F.3d at 653-54.

[3] Nissan Motor Corp. v. Harding, 739 F.2d 1005, 1010-11 (5th Cir. 1984).

[4] Mireles v. Crosby County, 724 F.2d 431, 433 (5th Cir. 1984); Stephens, 724 F.2d at 435.

[5] Pietzsch, 719 F.2d at 131-32.

process rights under the Fourteenth Amendment to the United States Constitution. There is no specific state regulatory scheme or policy being challenged as unconstitutional; the Plaintiff is challenging a state agency's seizure of his property and the prosecution of the resulting civil forfeiture action. Pullman abstention is therefore inapplicable to the present case.

*B.     Younger*

The doctrine of Younger abstention mandates that federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state proceedings pending at the time the federal action is instituted. Tex. Ass'n of Bus. v. Earle, 388 F.3d 515, 518 (5th Cir. 2004). Younger abstention originally applied only in cases of pending state criminal prosecutions. Health Net, Inc. v. Wooley, 534 F.3d 487, 494 (5th Cir. 2008) (citing Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). However, Younger now also applies "when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 10-11, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987).

The Younger abstention doctrine is not applicable to claims for damages. Lewis v. Bedingfield, 20 F.3d 123, 125 (5th Cir. 1994); Cmty. Care Bossier, Inc. v. Foti, 228 Fed. Appx. 444, 445 (5th Cir. 2007). According to the Plaintiff's complaint, he is not seeking injunctive relief; he seeks only monetary damages. Therefore, abstention under Younger would be an abuse of this Court's discretion. Cmty. Care Bossier, Inc., 228 Fed. Appx. at 445.

*C.     Burford*

"Burford abstention applies when a case involves a complex issue of unsettled state law that

is better resolved through a state's regulatory scheme." Moore v. State Farm Fire & Cas. Co., 2009 U.S. App. LEXIS 1058, *20 (5th Cir. Jan. 21, 2009); *see also* Burford v. Sun Oil Co., 319 U.S. 315, 332, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). Burford abstention should be exercised in two scenarios: (1) when "a case involves difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar," and (2) when "the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." Health Net, Inc., 534 F.3d at 496.

A court examines five factors when determining whether it should abstain under Burford: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review." Moore, 2009 U.S. App. LEXIS 1058 at *20. A Burford analysis is ultimately meant to be a "careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (citation omitted). The balance rarely favors abstention. Id.

While there is no unsettled issue of state law in the present case, the second scenario in which a federal court should abstain under Burford - when "the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern" - does not necessarily require the existence of an unsettled

issue of state law. Health Net, Inc., 534 F.3d at 496. However, the five factors and general purpose of Burford abstention articulated in Moore counsel against abstention in this case. Moore, 2009 U.S. App. LEXIS 1058 at *20.

First, the only remaining cause of action arises under federal law, weighing against abstention. Also, the parties have not identified, or even alleged the existence of, any particular state policy, law, or regulatory scheme at issue. There is no indication that the disputed actions here were part of a larger state-sponsored scheme or plan, rather than an isolated occurrence. As such, the Court can not agree that exercising federal jurisdiction in this case would disrupt any state effort to establish a coherent policy as to a matter of public interest; the parties have simply not alleged any such effort. Therefore, Burford abstention is inapplicable to this case.

### D. *Colorado River*

When a federal suit seeks monetary or other relief, even if declaratory relief is also requested, courts in this jurisdiction use the Colorado River standard to determine whether a stay of the federal proceedings is warranted. Transocean Offshore USA, Inc. v. Catrette, 239 Fed. Appx. 9, 11 (5th Cir. 2007). This Court's discretion to stay a case under Colorado River, however, is "narrowly circumscribed and requires the existence of exceptional circumstances before a stay is permissible." Id. (citations omitted).

A stay under Colorado River is permissible only when the federal and state proceedings are parallel; they must involve the same parties and the same issues. Transocean Offshore USA, Inc., 239 Fed. Appx. at 12 (citing Diamond Offshore Co. v. A & B Builders, Inc., 302 F.3d 531, 540 (5th Cir. 2002); Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc., 408 F.3d 248, 251 (5th Cir. 2005)). If the federal and state cases are parallel, the court engages in a multi-factored analysis to determine

whether stay of the federal litigation is warranted. The factors are: "(1) the assumption by either court over a res; (2) the relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings to protect the rights of the party invoking federal jurisdiction." Transocean Offshore USA, Inc., 239 Fed. Appx. at 12 (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). The factors are balanced, with the balance "heavily weighted in favor of the exercise of jurisdiction." Brown v. Pac. Life Ins. Co., 462 F.3d 384, 395 (5th Cir. 2006) (citations omitted).

It would not be appropriate for the Court to abstain under Colorado River as the state and federal proceedings at issue are not parallel. They involve the same issue but different parties. The state action is a civil forfeiture action, in which the property at issue is a party. The property is not a party to the case *sub judice*, and the Plaintiff in the case *sub judice* is not a party to the state forfeiture action. Further, the sole issue remaining in both actions is one of federal law, and "the presence of federal-law issues must always be a major consideration weighing against" abstention under Colorado River. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 26, 103 S. Ct. 927, 74 L. Ed. 2d 763 (1983).

*E.     Rooker-Feldman*

The Rooker-Feldman doctrine "holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments." United States v. Shepherd, 23 F.3d 923, 925 (5th Cir. 1994). "If the district court is confronted with issues that are inextricably intertwined with a state judgment, the court is in essence being called upon to review the state-court decision, and the originality of the

district court's jurisdiction precludes such a review." Id. Furthermore, application of the Rooker-Feldman doctrine is limited to "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). There has been no final judgment in the state court forfeiture action, and the remaining issue before the Court is not a challenge to a state court judgment. Therefore, the Rooker-Feldman doctrine is inapplicable to this case.

### E.     *Heck v. Humphrey*

One or more parties again assert that this Court should abstain under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The Court has already addressed the application of Heck v. Humphrey to this case and concluded that the Plaintiff's claim of due process violations in the seizure and forfeiture of the Mercury Cougar, Ford Mustangs, and $355.00 would not call into question his conviction. Therefore, his claim is not barred under Heck v. Humphrey. *See* Hampton, 2008 U.S. Dist. LEXIS 75849 at *10-*12.

### F.     *Res Judicata*

One or more parties also raise the issue of *res judicata*, citing Black v. North Panola Sch. Dist., 461 F.3d 584 (5th Cir. 2006). Black is inapplicable to this case because *res judicata* is inapplicable to this case. There has been no final judgment in the state court forfeiture action, and the issue is not whether the matter currently being litigated in federal court has already been litigated in state court. The issue is whether this federal court should abstain from considering a matter being concurrently litigated in state court.

## III.  CONCLUSION

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, and "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water Conservation Dist., 424 U.S. at 817-18 (citing McClellan v. Carland, 217 U.S. 268, 282, 30 S. Ct. 501, 54 L. Ed. 762 (1910)). While all of the parties to this action may desire for this Court to abstain from considering the issue currently before it, the Court is obligated to exercise the jurisdiction it has been given, and this case simply does not fit into any of the exceptions to that obligation, as discussed above.

A separate order in accordance with this opinion shall issue on this, the 31st day of March, 2009.

                                               **/s/ Sharion Aycock**
                                               **U.S. DISTRICT COURT JUDGE**